# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1315V**
**Filed: April 15, 2026**

|  |
|---|
| ROBERT BEN,<br><br>                        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. |

*Bradley S. Freedberg, Bradley S. Freedberg, P.C., Denver, CO, for petitioner.*
*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On May 5, 2021, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012).[2] (ECF No. 1.) He subsequently amended his petition three times. (ECF Nos. 23, 30, 40.) He ultimately alleged that he suffered chronic inflammatory demyelinating polyneuropathy ("CIDP") caused-in-fact by his influenza ("flu") vaccination. (ECF No. 40, pp. 1-2.)

Initially, petitioner filed a motion seeking an award of interim attorneys' fees and costs in March of 2025. (ECF No. 71.) However, the undersigned dismissed petitioner's case shortly thereafter on April 16, 2025. (ECF No. 73.) Petitioner then filed a motion confirming the final request for attorneys' fees and costs. (ECF No. 77.) For the reasons discussed below, and resolving both motions, petitioner is awarded attorneys' fees and costs in the reduced amount of $85,276.19.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

## I.    Party Contentions

Petitioner first filed a motion for an award of interim attorneys' fees and costs. (ECF No. 71.)  In that motion, petitioner sought a total award of $91,349.64, including $78,239.50 for attorneys' fees and $13,110.14 in costs.  (ECF No. 71-1, p. 2.)  Expert costs are the primary cost.  (*Id.*)  Dr. Shuper billed 35.75 hours at $300 per hour and Dr. Ruben billed 4.5 hours at $400 per hour.  (*Id.*; *see also* ECF No. 71-4, pp. 1-2.) Petitioner requested the following hourly rates for counsel:

|  | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| **Freedberg** | $410 | $455 | $480 | $515 | $550 | $580 |
| **Pearsall** | $250 | $270 | $300 | $315 | $350 | $390 |

(ECF No. 71-1, pp. 1-2.)

The rates requested for Mr. Pearsall through 2024 are consistent with what has previously been awarded; however, Mr. Freedberg was previously awarded only $540 per hour for 2024.  (ECF No. 71-1, p. 1 (citing *Greenhaw v. Sec'y of Health & Human Servs.*, No. 21-2032V, 2024 WL 4044101, at *2-3 (Fed. Cl. Spec. Mstr. June 18, 2024).) The undersigned is not aware of any decision adjudicating counsel's 2025 hourly rates.

In response to this motion, respondent deferred to the undersigned with respect to both the appropriateness and amount of any interim award for attorneys' fees and costs.  (ECF No. 72.)  However, respondent did raise a specific objection to the expert costs incurred.  He argued that

> Dr. Shuper appears to be a retired pediatric neurologist.  We have no adequate CV to evaluate his training or expertise.  Dr. Ruben is wholly unqualified to render any opinions on this case, as he is a general and vascular surgeon.  He has no training or expertise in neurology.  Aside from their obvious lack of qualifications, their theories and opinions are also clearly unreliable and overly vague and generic.  Respondent cautions against compensating petitioner's experts for their fees.

(*Id*. at 2 n.1.)

Petitioner did not file any reply.  However, petitioner later filed a separate motion for an award of final attorneys' fees and costs.  (ECF No. 77.)  In that motion, petitioner requested reimbursement of an additional 5.15 hours of Mr. Freedberg's time at his 2025 hourly rate, for an additional $2,987.00 in attorneys' fees, bringing the total request to $94,336.64.  (ECF No. 77.)  Petitioner did not respond to respondent's contention regarding his expert costs.

2

## II.    Analysis

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa-15(e)(1)(A)-(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  In this case, neither petitioner's good faith in bringing this petition nor the reasonable basis supporting the petition are challenged.

In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id*. at 1348.  It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work.  *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Such applications should not include hours that are "excessive, redundant, or otherwise unnecessary."  *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  In reviewing fee applications, special masters need not engage in a line-by-line analysis.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Instead, they may rely on their experience with the program to determine the reasonable number of hours expended.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521.  Attorneys' costs must also be reasonable and sufficiently documented.  *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

3

As noted above, most of the hourly rates requested by counsel through 2024 have been previously accepted as reasonable, except that Mr. Freedberg's 2024 rate is $540 per hour rather than the requested $550 per hour.  Mr. Freedberg billed 14.7 hours in 2024.  (ECF No. 71-1, p. 2.)  Accordingly, correcting his rate results in a reduction of $147.00.

Petitioner's counsel was first awarded forum rates in 2018.  *Mackey v. Sec'y of Health & Human Servs.*, No. 16-1289V, 2018 WL 3596801, at *3-4 (Fed. Cl Spec Mstr. May 10, 2018).  At that time, Mr. Freedberg represented that he had 28 years of experience.  *Id*. at 4.  Accordingly, under the Office of Special Masters' Attorneys' Forum Hourly Rate Fee Schedule, Mr. Freedberg's appropriate rate falls within the range of rates available to attorneys with 31+ years in practice, which for 2025 spans from $562-$627.[3]  Given this, the undersigned finds that Mr. Freedberg's requested rate of $580 per hour for work performed in 2025 is reasonable.  Although it represents a significant ($40) increase from his 2024 rate, it should be noted that the minimum rate for an attorney with 31+ years of experience under the Attorneys' Forum Hourly Rate Fee Schedule likewise increased by $39 from $523 per hour in 2024 to $562 per hour in 2025.

Mr. Pearsall requests a comparable $40 increase from a 2024 rate of $350 per hour to $390 per hour for 2025.  Mr. Pearsall was licensed to practice law in 2016.  *Comeau v. Sec'y of Health & Human Servs.*, No. 19-198V, 2021 WL 3053038, at *2 (Fed. Cl. Spec. Mstr. June 15, 2021).  Accordingly, under the Attorneys' Forum Hourly Rate Fee Schedule, his appropriate rate falls within the range of rates available to attorneys with 8-10 years of experience, which for 2025 spans from $401 to $511 per hour.[4]  Accordingly, Mr. Pearsall's requested rate for 2025 is reasonable.

With regard to the number of hours billed, based on my review of the billing records a 10% reduction is warranted for two primary reasons.  First, counsel did not utilize any paralegal.  Instead, paralegal tasks were handled by both Mr. Freedberg and Mr. Pearsall.  (*E.g.*, ECF No. 71-3, p. 1 (Mr. Pearsall billing on 1/25/21 for time spent locating health providers' contact information and preparing records requests); *Id.* at 7 (Mr. Freedberg similarly billing for records requests on 11/25/20).)  However, neither Mr. Freedberg nor Mr. Pearsall reduced their hourly rate to that of a paralegal for such tasks, as would have been appropriate.  Second, counsel badly erred in the initial framing of the petition.  The first petition filed in this case incorrectly identified the date of vaccination as November 13, 2019, when, in fact, it was in December of 2019, as later reflected in the second amended petition.[5]  (*Compare* ECF No. 1, p. 1, *with* ECF

---

[3]The Fee Schedule for 2025 can be accessed at:
https://www.uscfc.uscourts.gov/sites/cfc/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202025.pdf.

[4] *See* Fee Schedule for 2025, *supra* note 3.

[5] The initial petition cited to petitioner's affidavit to support the allegation that petitioner received the flu vaccine at issue on November 13, 2019.  (ECF No. 1, p. 1; *see also* ECF No. 27.)  In his first amended petition, petitioner alleged that he received the flu vaccine on December 13, 2019, citing a vaccine

No. 30, p. 1.)  As the dismissal decision explained, this difference ultimately meant that petitioner's alleged vaccine-caused injury pre-dated the vaccination at issue.  (ECF No. 73, pp. 20-22.)  And, even if this initial error could be excused, even after amending the petition, counsel continued to prosecute the case as if the date of vaccination were immaterial.  Specifically, after having been forewarned both by respondent's report and by order of the undersigned that the onset of symptoms likely pre-dated the vaccination (ECF Nos. 39, 42), petitioner's counsel submitted a report by Dr. Shuper that assumed, based on petitioner's affidavit rather than review of the medical records, that onset of petitioner's condition occurred post-vaccination (ECF No. 44; Ex. 10, pp. 7-9.)  Ultimately, as a result of this, Dr. Shuper's opinion was rejected because it relied on a false assumption.  (ECF No. 73, pp. 22-23.)  Had this issue been addressed more effectively, the case likely would have resolved in a more efficient manner.

Accordingly, attorneys' fees are awarded in the reduced amount of $72,971.55.[6]

### a.  Reasonableness of the Requested Attorneys' Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case.  *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).

As respondent noted, no complete curriculum vitae was filed for Dr. Shuper. Instead, a brief summary of his credentials filed by petitioner indicates that he is a professor emeritus in the faculty of medicine at Tel Aviv University.  (ECF No. 53-1; Ex. 13.)  His description of his publication history indicates a focus on pediatric development and seizure disorders.  (Ex. 13.)  Despite raising uncertainty with respect to Dr. Shuper's specific experience, respondent does not appear to dispute that Dr. Shuper is a medical doctor with training as a neurologist.  (ECF No. 72, p.2 n.1.)  Accordingly, even accounting for respondent's concern, the $300 per hour hourly rate Dr. Shuper requested is reasonable.  *E.g.*, *Lewis v. Sec'y of Health & Human Servs.*, 149 Fed. Cl. 308, 317 (2020) (noting prior cases for the proposition that neurologists are typically awarded rates of between $450-$500 per hour in the Vaccine Program).[7]  Although the

---

administration record at Exhibit 6.  (ECF No. 23, p. 1.)  In his second amended petition, petitioner alleged that the flu vaccine at issue was administered on December 19, 2019, again citing the vaccine administration record at Exhibit 6.  (ECF No. 30, p. 1.)  However, in his third amended petition, petitioner again alleged the flu vaccine was administered on December 13, 2019, citing the same administration record.  (ECF No. 40, p. 1.)  Ultimately, in his motion for a ruling on the written record, petitioner asserted his vaccination was administered on December 19, 2019.  (ECF No. 67, p. 3.)  The vaccine administration record indicates the vaccine was administered on December 19, 2019.  (Ex. 6, p. 2.)

[6] After accounting for the above reduction for Mr. Freedberg's 2024 rate, $81,079.50 x (.9) = $72,971.55.

[7] A single billing entry, Dr. Shuper's last, included a higher rate of $580 per hour.  However, because this resulted in only a de minimis $84 difference, this decision has not reached the question of whether $580 per hour would be a reasonable hourly rate for Dr. Shuper.  In light of respondent's concerns and the

hours billed seem somewhat high for the ultimate work produced, respondent has not raised any specific objection to the number of hours billed and, given the relatively low hourly rate, the total amount billed ($10,725) is not unusually high.  However, given that Dr. Shuper relied on petitioner's affidavit instead of conducting an appropriate review of the onset of petitioner's condition as reflected in the medical records (Ex. 10, pp. 7-9), the 8.95 hours Dr. Shuper billed for "review[ing] the medical records and [taking] note of key facts and issues" is not reimbursed in full.  Instead, these hours are reduced by 30%, resulting in a reduction of $805.50.

Respondent also argues that "Dr. Ruben is wholly unqualified to render any opinions on this case."  (ECF No. 72, p. 2 n.1.)  However, this argument was already addressed in the decision dismissing the case.  (ECF No. 73, p. 23 n.16.)  Dr. Ruben's opinion, though less weighty than the those of the neurologists, was credited as that of a medical doctor with experience treating patients with diabetic neuropathy, a condition petitioner suffered.  (*Id.*)  Absent his objection to paying Dr. Ruben anything, respondent has not otherwise raised any specific objection to Dr. Ruben's requested rate of $400 per hour and, especially given that Dr. Ruben only billed 4.5 hours, the undersigned declines to reduce Dr. Ruben's hourly rate *sua sponte*.

The remainder of the requested costs are reasonable and sufficiently documented.  Accordingly, attorneys' costs are awarded in the reduced amount of $12,304.64.

### III.      Conclusion

In light of the above, petitioner's motions (ECF Nos. 71, 77) are **GRANTED**, with reductions, and petitioner is awarded a lump sum of **$85,276.19**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's counsel of record, Mr. Bradley Freedberg's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[8]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

undersigned's review of the work product submitted in this case, it may be doubtful that Dr. Shuper could substantiate such a rate. Although Dr. Shuper opined in a prior case, it appears his hourly rate was not addressed, because the petitioner was not ultimately reimbursed for his work due to a loss of reasonable basis. *Mead v. Sec'y of Health & Human Servs.*, No. 19-667V, 2024 WL 4040000, at *5 (Fed. Cl. Sept. 4, 2024).

[8] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).